UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
ELIEZER SMAIA, JOSHUA FELDMAN, and :
NAFTELA DEUTSCH, individually and on behalf :
of all others similarly situated, :
: MEMORANDUM & ORDER
Plaintiffs, :
: 1:19-cv-4247 (ENV) (RML)
-against- :
:
NATIONWIDE CREDIT, INC., :
:
Defendant. x
--------------------------------------------------------------

VITALIANO, D.J.

On July 23, 2019, plaintiffs Eliezer Smaia, Joshua Feldman, and Naftela Deutch initiated this action, on behalf of themselves and those similarly situated, against defendant Nationwide Credit, Inc. ("Nationwide") for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1962, *et seq.* ("FDCPA" or "the Act"). Plaintiffs assert that Nationwide violated three FDCPA provisions, §§ 1692g(b), 1692e, and 1692e(10), through its use of allegedly confusing debt collection letters. Nationwide now moves for summary judgement on all of plaintiffs' claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, defendant's motion is granted.

Background[1]

Plaintiffs' lawsuit concerns the substance and formatting of three nearly identical letters. Given that wellspring, the relevant facts are found almost entirely within the four corners of

---

[1] The facts are derived from the operative complaint, defendant's Rule 56.1 statement and plaintiff's Rule 56.1 counterstatement, and any declarations and exhibits submitted by the parties. The Court resolves all ambiguities and draws all reasonable inferences in favor of plaintiff, as the non-moving party. *See Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

those letters. Between December 2018 and March 2019, all three plaintiffs received notices from defendant by mail informing them that their debts owed to American Express had been referred to Nationwide for collection. *See* Dkt. 22-5 ("Pls' SoF") ¶¶ 1–3; Dkt. 1-1, 1-2, 1-3 (the "Collection Notices"). The front fold of each mailing (*i.e.* the side that was partially visible under the clear plastic of the envelope) contains the name and address of the recipient, as well as a return address in the form of a PO box in Des Moines, Iowa ("PO Box 10354"), with only the words "PERSONAL AND CONFIDENTIAL" printed above the address. The front fold also contains instructions to "remit to" a different Des Moines, Iowa, PO box, this one with the name "Nationwide Credit, Inc." printed above the address ("PO Box 14581").

On the reverse side of each mailing is the letter itself, which comprises a total of two pages. At the top of the first page, in large font, is a heading with the name "Nationwide Credit, Inc." and the address for PO Box 14581 right underneath, and just below that hours of operation and a telephone number. Below the heading, the first paragraph of the letter consists of a single sentence stating that the recipient has an outstanding balance that has been referred to Nationwide.[2] The second paragraph of each letter then contains the following standard disclaimer required under 15 U.S.C. § 1692g(a)(4):

> Unless you notify this office within thirty days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume the debt is valid. If you notify this office in writing within thirty days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of

---

[2] In the case of the letters addressed to Feldman and Deutsch, the first paragraph also contains two additional sentences informing the recipient of the possibility that the creditor may add interest and fees to the balance in accordance with their agreement with the creditor. These two additional sentences in the first paragraph are the only detectable differences between the Feldman and Deutsch letters and the Smaia letter.

>       the debt or obtain a copy of a judgment and mail you a copy of such
>       verification or judgment. Upon your written request within the thirty-day
>       period after receiving this notice, this office will provide you with the
>       name and address of the original creditor, if different from the current
>       creditor.

Further down, in the middle of the first page of the letter, is a table providing two different means of payment. The first is to use Nationwide's online portal and the second is to pay by mail to Nationwide at PO Box 14581. The remainder of the first page of the Collection Notices contains various additional disclaimers required under federal and state law. The second page contains still more disclaimers, as well as a contact information update form.

There is no evidence in the record that plaintiffs ever sent a dispute or request for verification to Nationwide. *See* Pls' SoF at ¶¶ 9–10. Instead, on July 23, 2019, they sued, seeking redress for the purportedly misleading content of the Collection Notices. In their complaint, plaintiffs claim that the Collection Notices violated FDCPA in two ways. First, because they contained two separate addresses: PO Box 10354, which is included only as a return address on the front side of the envelope, and PO Box 14581, which is printed three times on each of the Collection Notices, each time accompanied by the name "Nationwide Credit, Inc.", and in one instance with hours of operation and a telephone number. Plaintiffs allege that the hypothetical "least sophisticated consumer", who is protected under FDCPA, would be confused as to which of these two addresses to send his or her written dispute, and thus might not dispute the debt at all. *See* Dkt. 1 ("Compl.") ¶¶ 64–68. In addition, plaintiffs claim that the required disclaimer paragraph informing plaintiffs of the 30-day validation period is "overshadowed" by other information in the letter, in violation of 15 U.S.C. § 1692g(b). Compl. ¶¶ 130–32.

Legal Standard

A district court must grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court's responsibility in assessing the merits of a summary judgment motion is not to try issues of fact, but rather to "determine whether there *are* issues of fact to be tried." *Sutera v. Schering Corp.*, 73 F.3d 13, 16 (2d Cir. 1995) (quoting *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244 (2d Cir. 1984)). The moving party bears the burden of demonstrating that there is no genuine issue as to any material fact, *see Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005), and the court will resolve all ambiguities and draw all permissible factual inferences in favor of the party opposing the motion. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004); *Gummo v. Vill. of Depew*, 75 F.3d 98, 107 (2d Cir. 1996) ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper"). In determining whether a party is entitled to summary judgment, the Court considers the "pleadings, deposition testimony, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." *Nnebe v. Daus*, 644 F.3d 147,156 (2d Cir. 2011).

Discussion

In order to determine whether a communication runs afoul of FDCPA, courts in the Second Circuit apply a standard reflecting the perspective of the "least sophisticated consumer". *Jacobson v. Healthcare Fin. Servs., Inc.,* 516 F.3d 85, 90 (2d Cir. 2008). The purpose of the least sophisticated consumer standard is to ensure that FDCPA protects "the gullible as well as

4

the shrewd." *Id.* Because FDCPA is a strict liability statute, a plaintiff need not show that the debt collector intended to deceive in order to prevail on a claim that a communication is misleading. *See Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60, 63 (2d Cir.1993). However, in applying that standard, a court must be careful to preserve the concept of reasonableness, for the Act does not aid a plaintiff "whose claims are based on 'bizarre or idiosyncratic interpretations'" of the debt collection communications she receives. *Jacobson,* 516 F.3d at 90 (quoting *Clomon v. Jackson,* 988 F.2d 1314, 1320 (2d Cir.1993)).

Defendant takes aim at plaintiffs' claim that the inclusion of two different addresses in the Collection Notices could have created sufficient confusion to constitute an FDCPA violation. Nationwide argues that the inclusion of PO Box 10354 once as a return address on the front fold of each letter could not have confused the least sophisticated consumer, who would have understood that PO Box 14581 was the correct address to send a verification request. This is primarily because PO Box 14581 is printed in three separate instances on the Collection Notices, each time beneath Nationwide's name and, at the top of the letter portion of the mailing, even alongside office hours and a telephone number. PO Box 10354, by contrast, is included only once, in smaller font and beneath the words "PERSONAL AND CONFIDENTIAL" rather than Nationwide's name. Additionally, its inclusion only on the front fold of the Collection Notices sets it apart from the paragraph informing plaintiffs of their right to mail Nationwide to request verification, which is located on the first full page of the mailing and is sandwiched between two separate mentions of PO Box 14581.

Common sense alone, even as understood among the least sophisticated, is sufficient to reject plaintiff's claim. But there is more: a well-blazed legal trail. The most cursory look at FDCPA precedent dealing with the inclusion of multiple mailing addresses reveals that

5

Nationwide's use of a different return address does not run afoul of the Act. Indeed, contrary to plaintiffs' attempt to distinguish it, the present case is on all fours with *Saraci v. Convergent Outsourcing, LLC*, in which a similar letter containing two addresses was found to comply with FDCPA because the correct address for correspondence was, as here, "listed on the letter three times" underneath the name of the debt collection agency, while the return address was a PO box listed only one time and without the name of the agency. No. 18-CV-6505 (BMC), 2019 WL 1062098, *3 (E.D.N.Y. Mar. 6, 2019). Significantly, the court in *Saraci* took care to note the fact that the "office" address on the letter was, as here, "listed next to defendant's office hours and telephone number, providing further support that th[e] address is correct." *Id.*

The only practical difference between the Collection Notices and the letters in *Saraci* is that both addresses here are PO boxes, while one of the addresses in *Saraci* was a street address. However, plaintiff cites no authority, and the Court is aware of none, standing for the proposition that the least sophisticated consumer might reasonably be confused by requests to send correspondence to a debt collection agency's "office" at an address that happens to be a PO box. In fact, in *Gansburg v. Credit Control, LLC*, after examining a letter like the one here and in *Saraci*—and in which both addresses were PO boxes—the court concluded that the presence of a return address without the credit agency's name did not violate FDCPA. No. 18-CV-5054 (FB) (ST), 2020 WL 1862928, at *1 (E.D.N.Y. Feb. 27, 2020).³ To cast off this precedent would be

---

³ Plaintiffs urge the Court to instead take cues from *Pinyuk v. CBE Grp., Inc.*, No. 17CV5753 RRM-CLP, 2019 WL 1900985 (E.D.N.Y. Apr. 29, 2019), and *Musarra v. Balanced Healthcare Receivables, LLC*, No. 19CV5814 ARR-RML, 2020 WL 1166449 (E.D.N.Y. Mar. 11, 2020), both cases in which there were *three* addresses included on the collection letters at issue. Aside from this obvious and significant distinction, at least two, and in one case all three, of the addresses included in those letters were affirmatively identified as being associated with the debt collection agency. In the present case, Nationwide's name is only printed alongside PO Box 14581. Undermined by these significant distinctions, plaintiffs' proffered cases are unpersuasive.

6

to ignore the Second Circuit's admonishment that FDCPA does not aid a plaintiff "whose claims are based on 'bizarre or idiosyncratic interpretations'" of the debt collection communications. *Jacobson,* 516 F.3d at 90. Nationwide is thus granted summary judgement on plaintiffs' claim regarding the inclusion of multiple addresses.

Turning to plaintiffs' remaining claim, Nationwide argues that the validation disclosure notice is not overshadowed by the content or formatting of the Collection Notices because it is located in the second paragraph of each letter and in font that is the same size and typeface as the rest of the letter. In opposition, plaintiffs insist that the text is not sufficiently prominent and was designed to trick consumers, but offer no authority or evidentiary analysis suggesting that this is the case.

Once again, neither common sense nor case law favors plaintiffs' position. While it is true that "courts have found collection notices misleading where they employ formats or typefaces which tend to obscure important information that appears in the notice," *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993), nothing has been done to minimize the prominence of the disclosure notice here. Indeed, the Collection Notices are exceedingly short, and if one were to read any portion of the letter at all, it would be the paragraph containing the validation notice. In this regard, moreover, the least sophisticated consumer is still expected not only to skim the letter, but to "read the letter in its entirety." *Kucur v. Fin. Recovery Servs., Inc.*, No. 19CV5453 AMD-VMS, 2020 WL 1821334, at *4 (E.D.N.Y. Apr. 9, 2020) (citing *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005)). That commonsense understanding is the last nail in the coffin for plaintiffs' argument.

Indeed, other courts faced with a validation notice located in the in the body of a debt collection letter have concluded that they were not overshadowed merely because they were the

7

same font as the rest of the letter. *See, e.g.*, *Hochhauser v. Grossman & Karaszewski, PLLC*, No. 19CV2468 ARR-RML, 2020 WL 2042390, at *4 (E.D.N.Y. Apr. 28, 2020) (validation notice in second paragraph of letter was not overshadowed); *Musarra v. Balanced Healthcare Receivables, LLC*, No. 19CV5814 ARR-RML, 2020 WL 1166449, at *7 (E.D.N.Y. Mar. 11, 2020) (validation notice in third paragraph of letter was not overshadowed). For this reason, Nationwide is granted summary judgment on plaintiffs' "overshadowing" claim as well.

<u>Conclusion</u>

For the reasons set forth above, summary judgment is granted in favor of defendant on all claims.

The Clerk of Court is directed to enter judgment accordingly and to close this case.

So Ordered.

Dated: Brooklyn, New York
      April 9, 2021

                                            */s/ Eric N. Vitaliano*
                                            ERIC N. VITALIANO
                                            United States District Judge